MARCKRES BROS., Appellee, v. PERRY GAS WORKS et al., Appellants.

PRINCIPAL AND AGENT: Authority — Accepting Benefits.
1   Authority in the principal's local agent to execute a lease in the principal's name, may be shown by testimony that, after the lease was entered into, the principal recognized the same, paid the rent accruing thereunder, and accepted the full benefits thereof.

FRAUDS, STATUTE OF: Election to Renew Lease. An election
2   by a tenant to avail himself of the option to extend the lease for an additional number of years at a *quantum meruit* rate, as provided in a written lease, need not be in writing—may be proven by the same kind of evidence which would establish delivery of a written instrument, i. e., oral testimony or acts.

LANDLORD AND TENANT: Evidence of Option to Renew Lease.
3   The exercise of the option to "renew" a lease for a definite

number of years at a *quantum meruit* rate, as provided in a written lease, is sufficiently shown by evidence (1) that the tenant remained in possession, and (2) that the parties mutually agreed on the new rental.

*Appeal from Dallas District Court.*—J. H. APPLEGATE, Judge.

NOVEMBER 1, 1920.

ACTION by plaintiff, as a lessor, to recover upon a lease the rentals due thereunder for a period of 10 months, the defendant, as lessee, having surrendered the premises prior to the accrual of such rents. The general defense was that the defendant was a tenant at will, and terminated his tenancy in due form, by service of a 30-day notice. There was a trial to a jury, and verdict and judgment for the plaintiff. The defendant appeals.—*Affirmed.*

*William Winegar, J. A. Reed,* and *William Smyth,* for appellants.

*S. Trevarthan,* for appellee.

EVANS, J.—The defendant Perry Gas Works was the lessee in a lease executed to it by the plaintiff as of March 1, 1914, for a term of three years, with a certain option of renewal to the defendant. Such option was

1. PRINCIPAL AND AGENT: authority: accepting benefits.

in writing, and in the following terms:

"It is further understood and agreed that the second party, his heirs or assigns, at the expiration of the period covered by this lease are to have the privilege optional with them of renewing this lease for a further period of two years from and after March 1, 1917, at an adjusted rental based upon what other rooms of similar size and location may be renting for at that time."

One Ingle was in local charge of the business of the

Perry Gas Works in the city of Perry, where the leased property was situated. The leased premises appear to have been used as the local office or headquarters at Perry of said company. The evidence for the plaintiff tended to show that, about two months prior to March 1, 1917, the said Ingle, purporting to act on behalf of the defendant company, asked for an adjustment of rental, pursuant to the foregoing option, which adjustment was assented to and agreed upon by both Ingle and the plaintiff. The result of this adjustment was to reduce the rental of $60, provided for in the original lease, to the sum of $55 per month. After March 1st, the defendant paid and the plaintiff accepted the monthly rental at $55. On September 1, 1917, the defendant vacated the premises, having served a 30-day notice in due form, on the theory that it was at that time only a tenant at will. It refused to pay further rent. The plaintiffs re-rented the premises temporarily, for the purpose of mitigating damages, and have brought their suit for the difference between the agreed rent and the amount thus received. The appeal is based upon two alleged grounds of reversal.

I.   One of these grounds is that Ingle, who purported to represent the defendant Perry Gas Works, was not authorized to exercise the stipulated option. It appears that Ingle was the only person in charge of the business of the company locally at Perry. He negotiated with the plaintiff for the original lease, and obtained the signature of the plaintiff thereto. He did not, however, sign the lease, but sent the same to Reed, the owner of the gas company, for signature. During the three years' occupancy under the original lease, Ingle paid the rent monthly, but did so with checks signed by Reed. After March 1, 1917, when the purported renewal went into effect, Ingle continued the payment of the monthly rental at the new rate of $55 per month. These payments were also made by the check of Reed. It is to be noted that, in the adjustment of rental, Ingle obtained for the Perry Gas Works a reduction of $5.00 per month. The Perry Gas Works, through

its owner, took the benefit of such reduction, without raising any objection to the authority of Ingle to agree upon
the same. This fact of itself was in the nature of an admission, and was evidence tending to show the authority of
Ingle. Needless to say, also, it tended to show ratification
of Ingle's conduct, even though express authority had been
lacking. The boundaries of authority and the scope of
duty of an agent are often indefinite. Such is the case here.
The scope of the agency of Ingle does not appear to have
been set forth in any writing. It seems to have rested in
parol, and in a general understanding between principal
and agent. The circumstances above enumerated were
clearly sufficient, and tended to show authority in Ingle.
None of these circumstances was denied. They were rebutted by the testimony of Ingle alone, to the effect that
he had no such authority.

II. It is urged that the oral testimony introduced by
the plaintiff was all inadmissible, because of the statute
of frauds. The right of defendant to continue as lessee of
the premises for an additional period of
2. Frauds, Statute of: election to renew lease. two years was provided for in the original
lease. The option thus stipulated for was
supported by the consideration of the lease,
and was undoubtedly enforcible by the defendant at its
election, before the expiration of the original term. The
extended term, therefore, was fixed, not by the oral agreement of the parties, but by the original lease. We do not
think that it would have been competent for these parties
orally to agree upon a term longer than one year. They
did not purport to do so. If, upon an election by the defendant to take the longer term, the plaintiff had refused to
recognize its right of option, the defendant could undoubtedly have enforced its rights under such option, either by
continuing in possession upon a *quantum meruit* of rental,
or by suing for damages. The statute of frauds forbids
oral evidence of contracts "for the creation or transfer of
any interest in lands, except leases for a term not exceeding
one year." The contract in this case was, in fact, made in

the original lease, with a rental for the extended term at a *quantum meruit,* and could have been enforced by the defendant, even though there had been no agreement as to what the reduced rent should be. In other words, no further agreement was *necessary* between the parties. The written agreement for renewal was made subject only to the election of the defendant. Was it requisite that such *election* should be in writing? No authorities are cited to us in support of the affirmative contention. The election by defendant was an *act,* and could be proved by acts, as well as by words. We see no reason why the acceptance of the option by the defendant might not be proved in the same manner as the delivery of a written instrument might be proved. The delivery of a written instrument is essential to its efficacy as a writing; but the delivery is no part of the writing. It may be proved by oral evidence or by acts. Likewise, the election or the acceptance by defendant was essential to the efficacy of the renewal; but the terms of the renewal were already fixed by the original writing. The election of defendant added nothing to them, although it put them into effect. It was not essential to the election or to its effect that there should be an agreement upon the rental. The agreement that was reached was a mutual declaration of what a *quantum meruit* would be.

We think, therefore, that the oral evidence in question was admissible only for the purpose of showing that the defendant did elect to accept the option; and that it was not objectionable under the statute of frauds, because it added nothing to the terms of the contract as written in the original lease.

III. It is further urged that the evidence was not sufficient to show an election or renewal. It is urged that there is a distinction between an option to *extend* a lease and an option to *renew* it. It was so held in *Andrews v. Marshall Creamery Co.,* 118 Iowa 595. The cases on this question from other jurisdictions are collated in 16 Ruling Case Law, 883, Sections 388 to 401. The dis-

3. LANDLORD AND TENANT: evidence of option to renew lease.

tinction is that a mere *extension* is an enlargement of the original term of the lease; whereas a *renewal* creates an additional term, rather than an enlargement of the first. The practical effect of this distinction is held to be that, where a written lease contains an option to the lessee to have an *extension*, then, if he continues in possession after the expiration of the original term, he is presumed to have elected to take the extension without any other evidence on the question. In other words, the presumption that he is holding as a tenant at will does not obtain in his favor. On the other hand, if the option be for a *renewal*, then mere continuance in possession after the expiration of the term of the original lease, is not, in itself, sufficient evidence of an election to *renew*. In the absence of other evidence to show an election, the lessee holding over must be presumed to be a tenant at will. The reservation in this case purported to be an option of "renewing this lease." It will be seen that the distinction between the two forms of option is a very close one, in any event, and somewhat artificial, if not fanciful, in its reasoning. Where the option is one to "renew *this lease*," we see little ground for recognizing the distinction at all. In such a case, the words "extension" and "renewal" might be deemed fairly synonymous. There are authorities so holding: *Insurance & Law Bldg. Co. v. National Bank of Missouri*, 71 Mo. 58; *Ranlet v. Cook*, 44 N. H. 512 (84 Am. Dec. 92); *Clarke v. Merrill*, 51 N. H. 415; *McBrier v. Marshall*, 126 Pa. 390 (17 Atl. 647). Be that as it may, we have no occasion here to pass upon it. The evidence on behalf of the plaintiff was not confined to the fact that the defendant continued in possession after the expiration of the original term. It was direct and definite that Ingle sought an understanding as to the rate of the adjusted rent for the additional period. That the rate was adjusted in fact is conceded. In the absence of an acceptance of the option, there was no occasion for the new adjustment. The direct testimony on behalf of the plaintiff at this point has abundant corroboration in

the circumstances. This evidence was sufficient to go to the jury.

The trial court submitted this question to the jury, as well as the question of the authority of the agent, upon instructions of which no complaint is made. We are clear that the finding of the jury has sufficient support in the evidence. The judgment below must, therefore, be—*Affirmed.*

Weaver, C. J., Preston and Salinger, JJ., concur.