L. D. POTTER et ux., Appellees, v. HENRY FIELD SEED COMPANY, a corporation, et al., Appellants.

No. 47227.

(Reported in 32 N. W. 2d 385)

MAY 4, 1948.

REHEARING DENIED JUNE 17, 1948.

Pendleton & Pendleton, of Storm Lake, and Keenan & Clovis, of Shenandoah, for appellants.

Whitney, Whitney & Stern and White & White, all of Storm Lake, for appellees.

HALE, J.—The plaintiffs, L. D. Potter and Linda Potter, are the owners of a business building in Storm Lake, the lower floor of which they rented to the defendant Henry Field Seed Company by lease extending from January 2, 1941 to June 1, 1944. Dr. Potter, one of the owners, who is a veterinary, had his office in the basement. This lease was extended on August 15, 1944, until June 1, 1947, by the following which was written on the back of the lease:

"August 15, 1944. By agreement of both parties to this contract the within lease is hereby extended until June 1, 1947, with all the terms as herein provided except that the rental shall be at the rate of $85.00 per month from and after September 1, 1944, and the second party agrees to accept for the first party all moneys on account paid in for the benefit of the first party and to account to the first party for the same." Signed by L. D. Potter and Linda Potter, Henry Field Seed Company by Elbert A. Read, vice president.

The lease contained, among other covenants, the following provision:

"It is agreed by both parties to this agreement that in the event that the above described property is not vacated and delivered to the party of the first part as above stipulated, then this lease shall be extended and in full force and effect, and the rental payments shall be continued on the terms above named."

Rent was paid by check issued at the Shenandoah office and mailed to plaintiffs at Storm Lake, with the notation on it of the month for which it paid the rent. Defendant paid the rent in advance for June, July and August 1947, at the rate of $85

per month. Dr. Potter refused the rent for September. Up to September 11 defendant continued answering telephone calls for Dr. Potter and collecting money for him on account. These services were discontinued on receipt of a letter by defendant from plaintiffs' attorneys directing such discontinuance.

On July 5, 1947, the defendant was notified by a letter, signed by Mrs. Potter, that its lease of the property had expired and that she would want possession of the building by · September 1, 1947, and defendant was notified to give possession not later than September 1.

On July 31 a notice was served on the defendant which is as follows:

"To: Henry Field Seed Co., Shenandoah, Iowa and
    Elbert A. Read, V. P.
    Harold Stevens:

"You and each of you are hereby notified to vacate and surrender the following described real estate, to-wit: [describing premises] on which premises you are now conducting a retail store and which you now occupy by virtue of a lease from Dr. L. D. Potter and Linda Potter, beginning January 2, 1941 and ending June 1, 1947. You are requested to vacate and surrender said premises on or before September 1, 1947, in as good a condition as you received said premises with ordinary wear and tear accepted.

"Dated at Storm Lake, Iowa this 30th day of July, 1947.
                "Signed L. D. Potter
                         Linda Potter by L. D. Potter
                         Owners of said property."

On September 3, 1947, a three-day notice to quit was served on the tenant.

The rental from January 2, 1941 to June 1, 1944 was $70 per month. Under the extension of 1944 the rent was $85 per month. As the time of the termination of the extended lease approached there were conversations between Dr. Potter and defendant's representatives relative to the continued occupancy by the defendant of the premises in question; defendant claiming that Dr. Potter said that it would be all right and defend-

ant could remain in possession of the premises for another year, but he also said that he would consult Mrs. Potter about it, and that there would be an increase of rent. No agreement was ever reached, however, as to the amount of rent, nor any final agreement as to re-renting the premises.

After the date of the expiration of the lease in 1947, on June 9 plaintiffs leased the property to one Virgil Cole for a term commencing September 1, 1947, but the defendant Henry Field Seed Company remained in possession of the premises, and so continued up to the time of the trial and thereafter.

Defendant claims that the lease was extended for a period of at least three years from the first day of June, 1947, by virtue of the clause of the original lease above quoted, claiming that it was an option to extend the lease. The district court construed the clause to mean that in the event the lessee held over the agreed expiration date, it became a tenant at will and subject to the terms of the lease. The court found against the defendant and decreed that a writ of possession issue. From this order of the court defendant appeals.

I. Defendant's first proposition is that if it was a tenant at will after June 1, 1947, no thirty-day notice of termination of tenancy was given. It argues that the notice to quit was not sufficient. There is no question but what the defendant holding over, after the termination of the lease, was a tenant at will. Section 562.4, Code of 1946; German State Bk. v. Herron, 111 Iowa 25, 82 N. W. 430; Nickle v. Mann & Clute, 211 Iowa 906, 232 N. W. 722; O'Brien v. Troxel & Brother, 76 Iowa 760, 40 N. W. 704. As such tenant it was entitled to a thirty-day notice of the termination of the tenancy. While the record shows that there were numerous talks about the extension of the lease from and after June 1, 1947, yet nowhere in the record is it disclosed that there was complete agreement or a meeting of the minds on all the provisions of the proposed continuation of the lease. The letter of Mrs. Potter and the fact that evidently the person in charge of the store at Storm Lake knew that the property had been rented to another, among other things, show that the tenant was not unaware that the tenancy must be terminated soon.

An examination of the notice served on July 31 shows that it contains everything required in such notice under the statute, section 562.4, Code of 1946. Defendant was notified that it must vacate and surrender the premises. The lease was described and its termination and the date by which the vacation of the premises must be accomplished were in the notice. It was denominated a Notice to Quit, which was sufficient as a notice of termination of the tenancy. Defendant could not mistake its meaning, and that is all that is required. There is no technical rule as to the language of the required notice. What is necessary is that the tenant shall understand that the tenancy cannot extend beyond a given date—in this case, September 1.

In various cases where the question of notice has been discussed, the notice required has been variously termed: Notice to Quit, and Notice of Termination of Lease. This proposition of defendant is without merit. See, Nickle v. Mann & Clute, supra; Hall v. Henninger, 145 Iowa 230, 121 N. W. 6, 139 Am. St. Rep. 412; Kuhn v. Kuhn, 70 Iowa 682, 28 N. W. 541, in which latter case the thirty-day notice was a mere notice to quit. See, 35 C. J., Landlord and Tenant, 1133, 51 C. J. S., section 173; 169 A. L. R. 913, 920; 156 A. L. R., annotations, 1310.

II. Defendant's second proposition is that by accepting rent for a time after expiration of the time fixed in the thirty-day notice and the three-day notice, the plaintiffs could not claim any benefit from said notices. The defendant argues from the terms of the provisions in the two leases that there was, in effect, a waiver of the notices. The original lease contained the provision that as part of the rental "second party to take care of telephone calls on telephone of first party during the absence of first party and second party to use its best efforts to care for the professional business of first party during the absence of first party." The plaintiff Potter, a veterinary, was necessarily absent from his office a considerable time and this provision is merely what it says—to keep account of calls as they came in.

When the new lease was executed on August 15, 1944, there was added the following: "Second party agrees to accept for the first party all the moneys on account paid in for the benefit

of the first party and to account to the first party for the same," and, as stated, this continued until terminated on September 11 by order of the landlord. Defendant's argument is on a somewhat slender basis that this part of the agreement continued to be rendered after September 1—the date fixed for the termination of the lease by the notice.

September 8 was the termination of the three-day notice to quit, and defendant contends that by reason of defendant furnishing that service, both after September 1 and September 8, up to September 11, the plaintiffs cannot rely on either of said notices as furnishing a basis for this action. One trouble with defendant's contention is that, if we consider the service rendered, the amount of which service the record fails to disclose, as a part of the rent, it was not all of the rent but only a very small portion thereof, consisting of ten days answering the telephone after the termination date fixed in the first notice, and two days answering the telephone after receipt of the second notice to quit. As we have stated, plaintiffs refused to accept the cash rent after September 1, and the service rendered, if any, would be an extremely minute portion of the entire rent. We could hardly say, under these circumstances, that the plaintiffs actually received the rent. See, Benakis v. Damas, 193 Iowa 534, 187 N. W. 436.

The acceptance of rent after the date fixed for the termination of a lease and the effect of such acceptance, is a question on which the courts are not in agreement. 32 Am. Jur., Landlord and Tenant, section 1004, cited by defendant. Various cases cited by defendant from different jurisdictions are in some cases dependent upon the form of the statutes, and the courts are not uniform as to the reasons, expressing various views as to whether or not there is an implied waiver or revocation of the termination of the tenancy. See cases cited in the annotations to the case of Barlow v. Hoffman, 103 Colo. 286, 86 P. 2d 239, 120 A. L. R. 552, such annotations being found on page 561 and following. It is said therein, editorially, page 561:

"As the tenant's liability for rent accrues on the day the rent is due, and the termination of the tenancy thereafter can have no effect upon that liability, acceptance of rent, or any

attempt by the landlord by action or distress to collect rent already accrued and owing prior to the expiration of the notice to quit, does not constitute a revocation or waiver of such notice previously given. The authorities are uniform in support of this proposition."

But on page 562 the general rule is stated, as we have given it, that the courts are not in accord, and states that probably the greater weight of authority is that it constitutes a waiver in certain cases.

We think that the true rule is that payment by the tenant and acceptance by the landlord of rent, even after the expiration of a notice by the landlord to quit, and much less during the running of the notice, is not in itself a waiver on the part of the landlord of the notice previously given, but is merely evidence to be considered in connection with all the circumstances of the case. See cases cited on page 567, 120 A. L. R. We think this rule is one which should be applied in the present case.

It has been held that the question of waiver is one of intent. Myers v. Herskowitz, 33 Cal. App. 581, 165 P. 1031.

"While it has been held that the receipt by a landlord of rent for a new term or part thereof, after notice to quit, amounts to a waiver of his right to demand possession under that notice, it has also been held that the acceptance of rent after notice to quit does not necessarily operate to waive the notice, since waiver always rests on intent." 52 C. J. S., Landlord and Tenant, 654, 661, section 769f, and cases cited therein.

We have never held that a bare acceptance of a portion of the rent would constitute a waiver of the notice of termination, but the acceptance of service may be considered as a fact in connection with other facts as showing the intent of the landlord or the intent of the parties. In this case it is obvious that the mere answering of the telephone or the acceptance of money on behalf of the plaintiffs, even if the record had shown service was rendered, would not be sufficient unless combined with other circumstances, actions, or promises, to show the court that there

was an intent on the part of the landlord to waive the notice of termination previously given. We agree with the district court in holding that the circumstances of this case are entirely insufficient to warrant a holding of waiver or intent to waive.

III. Defendant urges that the court erred in refusing to hold that the lease was extended for another three-year term, basing its argument on the alleged acceptance of services, which we have discussed in the prior division, and upon the terms of the lease. We have heretofore referred to the agreement embodied in the first lease as to the effect of failure to vacate the premises. It might be considered that this provision was for the protection of the landlord. However that may be, defendant argues that the statutory presumption of his holding over as a tenant at will does not apply. Defendant's reasoning is based on the theory that the provision of the lease is for an extension and not a renewal. The distinction in this case is not altogether apparent and we do not consider that the language of the lease gives an option to the tenant to continue in 1947.

The verbal distinction between extension and renewal, if there is such, must give way to the intent and purpose of the lease. This matter is considered in 51 C. J. S., Landlord and Tenant, 592, section 54b. The language of the text is as follows:

"In a strict sense, an extension involves a present demise, whereas a renewal involves a covenant to grant an estate and requires some affirmative act to effectuate the grant; but a distinction between the terms is not always observed, and it has been said that the tendency of the courts is to disregard any such distinction."

On page 596 it is further said:

"A provision for extension or renewal, in order to be enforceable, must be definite and certain in its terms, particularly the terms with respect to the duration of the additional term and the amount of rent to be paid."

Of course some of the terms of the contract may be left to future arbitration or appraisal. The rule is that it is generally considered, and the authorities so hold, that an option

for renewal or extension must be construed according to the intent of the parties, which is evidenced by the language of the agreement and the practical construction placed on it. In the present case it appears that the practical construction placed upon the lease executed in 1944 and the provision heretofore referred to, was that there must be a new lease. Neither party indicated by words or actions that anything short of a new contract would be satisfactory. Nothing else appeared to be in the minds of the parties. This was their own practical construction of the provision for extension.

At the period near the termination of the lease in 1947 the parties did not in any way rely upon or interpret this provision as automatically extending the term. This is shown by the action of the parties. Neither did the parties so indicate at the termination of the first lease. It was not construed by them as automatically extending the term since it is shown by the evidence that the parties considered it necessary, at the expiration of the term of the first lease, that a new lease must be executed as shown by the endorsement on the back of the original lease. As a general rule, a general covenant to renew is satisfied by one renewal, unless further renewals are expressly provided for. 35 C. J., Landlord and Tenant, section 143, 51 C. J. S., section 61; Mecklenburg Real Estate Co. v. Kyoleum Co., and combined cases, 142 Tenn. 295, 218 S. W. 821, 14 A. L. R. 944, and notes; 32 Am. Jur. 813, section 968; Krug v. Deering Implement Co., 239 Iowa 157, 164, 30 N. W. 2d 729, 732, and authorities cited.

The mere continuance in possession where a lease gives an option to renew is not sufficient evidence in itself of an election to renew. Branagan v. Winders & Alm, 194 Iowa 461, 187 N. W. 440.

On the question of distinction between renewal and extension, defendant cites Marckres Bros. v. Perry Gas Works, 189 Iowa 1204, 1209, 179 N. W. 538, 540, and Andrews v. Marshall Creamery Co., 118 Iowa 595, 600, 92 N. W. 706, 708, 60 L. R. A. 399, 96 Am. St. Rep. 412. Neither of these authorities supports the defendant's contention in the present case under the circumstances of this case. In the opinion in the Marckres case

by Judge EVANS it is indicated that the distinction. between the forms of option, that is, extension and renewal, is a very close one and, as is termed in the opinion "artificial, if not fanciful, in its reasoning." He states that in case of an option for.renewal they "might be deemed fairly synonymous." Citing authorities.

The opinion further states:

"Be that as it may, we have no occasion here to pass upon it. The evidence on behalf of the plaintiff was not confined to the .fact that the defendant continued in possession after the expiration of the original term. It was direct and definite that. Ingle sought an understanding as, to the rate of the adjusted rent for the additional period."

The Andrews case refers to the holding over for an additional term and states:

"Now, it seems to us more reasonable to assume that the tenant holding over after the expiration of his term, without more, elects to become a tenant at will, provided his landlord allows him to remain in possession, than that he thereby elects to bind himself for an additional term, which he might have availed himself of by acting under the provisions of his lease, but which he has in fact indicated no intention to claim or become bound for." The court holds that "the holding over alone was not sufficient to establish an exercise of the option to renew."

In the present case there was neither an indication of an option to renew or extend. The parties by their own acts recognized that the provision of the lease was no more than a right to renew, and it required the affirmative action of the parties to execute a new lease or a renewal of the lease under terms to be agreed upon in the future, and, in any event, the extension provided for in the lease of 1941 was not a perpetual right, but, if a valid agreement of extension, did not extend beyond the period of the second lease.

Under the facts of this case there is no question that negotiations were pending at the expiration of the term of the lease in 1947. If such negotiations are pending between lessor and

lessee for further lease, the subsequent possession of lessee is as tenant at will, not as a tenant holding over under extension or renewal of lease. Iowa Implement Co. v. Aetna Explosives Co., 181 Iowa 1186, 165 N. W. 408.

IV. Defendant insists that the preponderance of the evidence shows an oral extension of the lease for one year, except that the cash rental was on a quantum meruit basis. This is a question of fact. We have examined the evidence with care and cannot agree that it shows any promise to renew. There was, at most, a conflict in the testimony of the plaintiffs and defendant, but we think that in no event does it show any meeting of minds or any promise by the owners of the building that could be relied upon as an oral extension of the lease.

The evidence of defendant relates to alleged conversations between representatives of defendant and Dr. Potter, including a statement by one Stevens in charge of defendant's store. The doctor said that he was satisfied with the occupancy and that defendant could have the building for another year, but there would have to be an increase of rental. Dr. Potter denied telling Mr. Stevens he could have the place for another year, but admitted saying that there would have to be an increase of rental; that he would talk the matter over with his wife and would let them know. This is the substance of the testimony as to the conferences.

Of course we have merely indicated the nature of the testimony relied upon by defendant, but the record does not bear out the claim that there was any definite agreement between the parties. Under this evidence it appears, at the most, that any proposed agreement was never completed. This is a question of fact which was passed upon by the court and we think correctly.

Our holding must be that the court was correct in its findings and conclusion. Its ruling must be and is affirmed.—Affirmed.

All Justices concur.