FLETCHER GOURLEY, appellee, v. HERMAN S. SNATER et al., appellants.

No. 50084.

(Reported in 106 N.W.2d 924)

JANUARY 11, 1961.

Hogzett & Burgett, of Oakland, for appellants.

Jonathan B. Richards, of Red Oak, and Harold Bickford, of Villisca, for appellee.

HAYS, J.—This action commenced in equity January 19, 1959, involves the rights and liabilities of the parties to a written agreement entered into June 18, 1949, and prays for a money judgment for a balance of rentals or royalties alleged

to be due thereunder. A judgment was entered as prayed for in the petition.

Plaintiff is a farmer and landowner. Defendants are engaged in the business of quarrying rock and gravel used in road construction. Under the agreement in question defendants were given certain rights as to twenty acres of plaintiff's land. This agreement in part provides:

"IT IS AGREED, this lease is granted for a period of *30 days* from date hereof, and before the expiration of the *30 day* period, second party agrees to prospect said property to ascertain the approximate quantity and quality of rock and/or gravel after which second party has the right and option to extend this lease for an additional period of not to exceed *fifteen* years; said option shall be extended by second party giving to first party, a notice in writing of their intention to extend said lease."

The agreement further provides a royalty or rental to be paid at the rate of fifteen cents per unit of sale, for all material delivered and sold. It further provided for a minimum royalty of $2000 per year during the term of the lease with a formula for equalizing the same through the years. Defendants were given the right to erect plants and equipment on the premises for their operations and the lease provided "said plants may be removed and re-erected at various times under this lease." Finally, it provided "second party * * * may terminate this agreement by giving the party of the first part sixty (60) days notice in writing, by registered mail, of such termination."

Immediately upon the signing of the agreement defendants entered the premises with heavy equipment and commenced the quarrying of rock and gravel. Royalties, payable monthly by the terms of the agreement, if extended, were paid to first party each month of July through December 1949 and amounted to $8011.67. Under the adjusting schedule, this amount covered the minimum payments through June of 1953. Late in December 1949 or early in January 1950 defendants removed all plants and equipment from the premises and have done nothing further in the way of quarrying thereon. It is conceded defendants never gave first party a notice of their intention to exercise the

"right and option to extend this lease for an additional period of not to exceed *fifteen* years" nor has any written notice been given by the defendants of a termination of the agreement.

Plaintiff seeks judgment for the balance of the minimum annual royalty of $2000 on the basis of a fifteen-year term, it being his contention that by holding over after the expiration of the 30-day lease, defendants elected to extend the lease for the additional term of fifteen years. Defendants contend there was no exercising of the option by the mere holding over the 30-day period and that they were thereafter tenants at will; they also contend that the lease was terminated by mutual agreement of the parties in 1953.

I. The trial court found that the lease had been extended for the fifteen-year period and this finding is assigned as error. An examination of the authorities shows that the courts frequently draw a distinction between an option to renew a lease and an option to extend it. This distinction appears to be that a mere extension is an enlargement of the original term of the lease, while a renewal creates an additional term, rather than enlargement of the first. If the option is for an extension, continued possession after expiration of the original term is presumed to be an extension without other evidence on the question. If the option be for a renewal, mere continuance after the expiration of the original lease is not, in itself, sufficient evidence of an election to renew and the extended tenancy is deemed to be a tenancy at will. The real answer is, however, what was the intent of the parties as evidenced by the statements and conduct. Andrews v. Marshall Creamery Co., 118 Iowa 595, 92 N.W. 706, 60 L. R. A. 399, 96 Am. St. Rep. 412; Fritch & Himes v. Reynolds, 189 Iowa 16, 176 N.W. 297; Marckres Bros. v. Perry Gas Works, 189 Iowa 1204, 179 N.W. 538; Branagan v. Winders & Alm, 194 Iowa 461, 187 N.W. 440; Potter v. Henry Field Seed Co., 239 Iowa 920, 32 N.W.2d 385; 51 C. J. S., Landlord and Tenant, sections 69, 77 and 78; 32 Am. Jur., Landlord and Tenant, sections 982 and 983. We think, as a practical matter, and certainly as applied to the instant facts, the distinction between an extension and a renewal is one of words rather than of substance.

The record amply sustains the finding that both parties to the agreement considered the fifteen-year period to be in force and effect after the expiration of the 30-day lease, and probably before its expiration. The 30-day lease was supported by a stated consideration of "one dollar ($1.00) and other valuable consideration"; it was primarily to give defendants the right to enter onto the premises and prospect as to the quantity and quality of the deposit of rock and gravel. In the 30-day lease no mention is made of any right to quarry and there is no mention of a royalty or rental to be paid for materials removed. While the provisions for prospecting and quarrying are found in the same physical document, it was clearly anticipated that the rights of the parties would be different under the 30-day term and the fifteen-year term. We think this is further evidenced by the requirement of a written notice of intention to make the fifteen-year term operative. This required notice of intention may be waived by the payment and acceptance of rent, as provided in the agreement, after the expiration of the period provided in the original lease. 51 C. J. S., Landlord and Tenant, section 77, page 630. It is here a conceded fact that royalties or rent was paid to first party during July to December 1949 inclusive, as per the terms of the fifteen-year-term provisions. Defendants would attach considerable importance to the fact that all plants and equipment were removed from the premises as evidence of an intention to terminate the lease. We think this fact merits little consideration due to the provisions of the agreement that "said plants may be removed and re-erected at various times under this lease."

One other fact lends support to the finding that the lease was not intended to be abandoned in January 1950. On June 23, 1953, defendant Kirtley wrote a letter to plaintiff which is as follows:

"We want you to know we have not forgotten the lease we have with you on your property * * * for the purchase of gravel.

"It has been rather difficult to sell * * * surfacing during the last three years. However, rather than try to relate the

circumstances in a letter I will arrange to visit with you at your home sometime during the next two or three weeks at which time I will explain our plans and discuss anything about the lease that you wish."

This letter was written at about the time that the period for which minimum royalties were paid, expired. No other construction can be given the wording of this letter than that at the time it was written defendants still thought the lease agreement of June 1949 was effective. Certainly there is nothing in the letter expressing, or indicating, a thought of terminating the same. We think under the authorities, above cited, it must be held that the terms of the original agreement were extended or renewed, whichever one wishes to call it.

Defendants, while admitting that no notice of termination was ever given plaintiff, as provided in the lease, contend that it was terminated by the mutual agreement of the parties. Kirtley states that he called upon plaintiff at his home and discussed the matter. While he states this meeting was before he wrote the letter, above set forth, we think this must be a mistake as to time if the meeting was held. At that meeting plaintiff was told defendants did not intend to further operate upon his land. Plaintiff then stated that it had been good while it lasted. Plaintiff denies that there was ever a meeting with Kirtley after the signing of the agreement in 1949. The trial court found no such meeting was held. Whether this action be held to be at law, as the trial court did, or in equity, as it was originally brought, we think the record will sustain such a finding.

Defendants also contend that after 1950 plaintiff entered upon the leased premises and used it for grazing livestock, which constituted an ouster of defendants. There is no merit to this claim. While the lease provides that the defendants shall fence the operations, if requested by plaintiff, no request was made and from what appears in the record livestock may have grazed the premises from the outset of the operations.

Assuming defendants were tenants at will after the 30-day period, as they contend, we fail to see wherein this would strengthen their position, in view of our holding that the lease was not terminated by mutual agreement. Section 562.4, Code,

1958, provides that a tenancy at will may only be terminated by either party by the giving of a thirty-day written notice of such termination. No such notice was ever given.

Defendants plead plaintiff was guilty of laches, in that he waited from 1953 to 1959 to make a demand upon them for the alleged rental due. Whatever claim plaintiff has is predicated upon a written agreement to pay rent for a period of fifteen years. They were paid until 1953 and judgment is asked for the balance covering a period to 1959. It is not contended this action is barred by the statute of limitations and we fail to see where a plea of laches is beneficial, especially in the absence of a showing of a change of position upon the part of the defendants. Such is not shown.

The judgment of the trial court should be and is affirmed. —Affirmed.

All JUSTICES concur except PETERSON and SNELL, JJ., who take no part.