**William J. SCHILTZ and Jane E. Schiltz, Appellants,**

v.

**TELEDIRECT INTERNATIONAL, INC., An Iowa Corporation, Appellee.**

No. 93–907.

Court of Appeals of Iowa.

Sept. 16, 1994.

George B. Norman of Gillman, Konecky & Norman, Rock Island, IL, for appellant.

Bryan L. Sylvester of Allbee, Allison & Denning, Muscatine, for appellee.

Considered by DONIELSON, C.J., and SACKETT and HUITINK, JJ.

DONIELSON, Chief Judge.

This appeal arises from an action at law in which the lessors of property sought the recovery of rent from their former tenant. William and Jane Schiltz (Schiltzes) leased office space to TeleDirect International, Inc., (TDI), for one year commencing April 1, 1988. The dates and periods of time relevant to this appeal include:

4/1/88—3/31/89 Term of one-year lease

5/89 Lessors' execution of Assignment of Real Estate Lease and Agreement [1]

4/1/89—3/31/91 Term of two-year option to renew

4/1/91—3/31/94 Term of three-year option to renew

8/91 Tenant informed Lessors of intent to vacate premises

1/92 Tenant vacated leasehold

The Schiltzes drafted the lease. TDI had its attorney review it and minor revisions were made before TDI's president executed it. The lease contained the following provisions:

. . . .

1.

. . . .

b) The term of said Lease shall be one (1) year commencing April 1, 1988 (hereinaf-

---

**1.** The evidence at trial was not definite as to the date when the Assignment was executed; the Schiltzes use this date in their appellate brief.

ter "Commencement Date") and terminating on March 31, 1989. Lessee shall have an option to renew this Lease for an additional term of two (2) years upon the same terms and conditions as are provided herein. Lessee shall have a second option to renew this Lease for an additional three (3) years upon the same terms and conditions as are provided herein for a total of six (6) years. The options shall be exercised by Lessee giving notice by certified mail to Lessor, return receipt requested, at least 90 days before the expiration of the Lease term. It shall be a condition of the exercise of the foregoing option that at the time of the exercise of said option, Lessees shall not be in default hereunder.

. . . .

j) Electricity used to operate computers, machinery, and or/test [sic] equuipment [sic] shall be estimated by the Lessee and paid for on a monthly basis as additional rent. If desired, Lessor will provide assistance to arrive at this estimated monthly usage of electricity.

. . . .

14. In the event of holding over by Lessee after the expiration or termination of this Lease, the hold over shall be as a tenant at will and all of the terms and provisions of the Lease shall be applicable during that period, except that Lessee shall pay Lessor as rental for the period of such hold over an amont [sic] equal to one and one-half the rent which would have been payable by the Lessee had the hold over period been a part of the original term of this Lease.

Rent for the office space was based on the square footage leased by TDI and was initially $2,000 a month. TDI subsequently rented additional office space from the Schiltzes, increasing its monthly rent to $3,000. In August 1989, following a request from Mr. Schiltz, TDI paid $492 to cover its electrical usage for the period from April 1, 1988, through August 1989. TDI made no subsequent payments for electrical usage, and the Schiltzes made no further demands for reim-

bursement until they terminated TDI's tenancy.

TDI did not exercise its option to renew prior to the termination of the lease on March 31, 1989. It continued to occupy the leased space and paid the regular monthly rate of rent rather than the holdover rate specified in the lease.

Sometime after expiration of the one-year lease term TDI asked the Schiltzes to execute an "Assignment of Real Estate Lease and Agreement." Execution of this document was necessary to facilitate TDI's SBA loan application. The Assignment specified it was an assignment of TDI's leasehold interest "for and during the remainder of the term mentioned in the lease, and all renewals and extensions of said term."

The terms of the Assignment provided the Schiltzes were providing their covenant and agreement TDI was not in default in its performance of the lease. The Assignment also contained an amendment to the lease which gave TDI a third option for renewal of the lease.

In August 1991 TDI informed the Schiltzes it was vacating all leased premises. Prior to this time Mr. Schiltz had been under the impression TDI had exercised its option to extend the initial one-year lease agreement. The Schiltzes demanded TDI pay additional holdover rent for the period commencing with the termination of the one-year lease, April 1, 1989, through August 1991.[2] TDI refused to do so.

The Schiltzes filed suit seeking holdover rent for the twenty-nine month period following the expiration of the original lease term, reimbursement for electrical charges, and attorney fees as provided for in the lease. Following a trial on the matter, the trial court found the Schiltzes had waived the necessity of a written notice to exercise the options to renew and had treated the lease as renewed. The trial court concluded they were estopped from denying renewal or extension of the lease and denied them any recovery for holdover rent. The trial court

---

2. The parties reached an agreement regarding the amount of rent to be paid for TDI's use of the office space from September 1991 until it vacat-

ed the office space in January 1992, and the applicability of the lease holdover provisions to that rental period is not at issue on appeal.

also directed a verdict in favor of TDI with respect to the claim for reimbursement of electricity usage. The court found the Schiltzes had failed to present a reasonable basis in the record from which the electricity expenses could be inferred or approximated.

On appeal the Schiltzes contend the trial court erred in not awarding holdover rent and reimbursement of the electricity charges. Our scope of review is for the correction of errors at law. Iowa R.App.P. 4.

## I.  Options to Renew—Estoppel

We find no error and affirm the trial court's judgment to the extent it found the Schiltzes are estopped from denying renewal of the lease. A lease requirement of a written exercise of an option to renew or extend a lease may be waived. See, e.g., Gourley v. Snater, 252 Iowa 368, 106 N.W.2d 924, 927 (1961) (notice waived by payment and acceptance of rent); see also 32 A.L.R.4th 452 Waiver or Estoppel as to Notice Requirement for Exercising Option to Renew or Extend Lease (1984). Iowa law provides the mere continuance in possession is not alone sufficient evidence of an election to renew a lease. Potter v. Henry Field Seed Co., 239 Iowa 920, 32 N.W.2d 385, 390 (1948). However, the holding over of a lessee in conjunction with other conduct can constitute an exercise of an option to renew. See, e.g., Marckres Bros. v. Perry Gas Works, 189 Iowa 1204, 1209, 179 N.W. 538 (1920) (adjustment of rental rate was evidence of exercise of option to renew); Andrews v. Marshall Creamery Co., 118 Iowa 595, 596–97, 92 N.W. 706 (1902) (installation of improvements and representations of tenant's agent constituted exercise of option to renew).

In its answer TDI asserted the affirmative defense of estoppel. Law and equity have concurrent jurisdiction of this defense, Manson State Bank v. Diamond, 227 N.W.2d 195, 200 (Iowa 1975), and it was properly raised in this action. Neither TDI's answer nor the trial court's Verdict and Judgment Entry indicated what specific estoppel doctrine was relied upon. From our review of the record, it appears the circumstances of this case support application of estoppel by acquiescence.

Estoppel by acquiescence occurs when a person knows or ought to know of an entitlement to enforce a right and neglects to do so for such time as would imply an intention to waive or abandon the right. In re Marriage of Fields, 508 N.W.2d 730, 731 (Iowa 1993); Davidson v. Van Lengen, 266 N.W.2d 436, 438 (Iowa 1978). "Estoppel by acquiescence is based on an examination of the rightholder's acts to determine whether the right has been waived." Fields, 508 N.W.2d at 731. It advances a policy of stability and conclusiveness. Davidson, 266 N.W.2d at 439.

Estoppel was warranted in this case. For the entire twenty-nine month period following expiration of the lease, the lessors had accepted, without objection, the base rental payments made by TDI; they had executed an assignment of the lease indicating TDI was not in default of the lease provisions; they had negotiated the lease of additional office space with TDI, and, for all intents and purposes, had conducted themselves as if the options to renew had been exercised. We have considered the lease provision which indicates a delay in enforcement of the lessors' rights is not a waiver and find the Schiltzes' conduct in this case supersedes the effect of that provision. We cannot find the trial court erred in estopping the Schiltzes from denying the renewal or extension of the lease.

In their brief the Schiltzes argue if the second option to renew was exercised, then TDI owes rent for the balance of the three-year term. The Schiltzes did not plead this alternative theory of recovery in their petition nor did they present evidence in response to TDI's defense of failure to mitigate. The record does not support recovery for them on this claim.

## II.  Electricity Charges

We concur with the trial court's assessment the evidence of damages related to the unpaid electrical charges is insufficient to sustain any award. A plaintiff is required to establish a claim for damages with some

reasonable certainty, showing a rational basis for ascertaining their amount. *Conley v. Warne*, 236 N.W.2d 682, 687 (Iowa 1975). Overly speculative damages generally cannot be recovered. *Jamison v. Knosby*, 423 N.W.2d 2, 7 (Iowa 1988).

Paragraph 1(j) of the lease requires the tenant to pay for some its monthly electrical use. No specific amount or formula for calculation is included in the lease. Instead, the tenant is required to estimate its usage.

Insufficient evidence was provided from which the trial court could adequately determine the amount of electricity expenses which TDI should pay. Mr. Schiltz's testimony revealed his $1,000 estimate was basically speculative in nature. The trial court did not err in granting TDI's request for a directed verdict on this issue.

**AFFIRMED.**