Carhart v. White.

# H. B. CARHART *v.* WHITE MANTEL & TILE COMPANY.

## (*Knoxville.* September Term, 1909.)

1. **LANDLORD AND TENANT.** Lease is not renewed by holding over and paying original rental, under a privilege to renew lease at increased rental.

Where a lease provides for an additional term at an increased rental, and the tenant holds over after the expiration of the lease period and pays the increased rental, this constitutes affirmative evidence on his part that he has exercised the option to take the lease for the additional term; but where such tenant so holding over does not pay the increased rental so stipulated for, but continues to pay the original rental which the lessor accepts, without objection or demand of additional rental, this negatives the idea of the acceptance of the additional term, and such tenant occupies the *status* of a tenant at will. (*Post, pp.* 460-470.)

Cases cited and approved: Insurance Co. v. Bank, 71 Mo., 58; Delashman v. Berry, 20 Mich., 292; Terstegge v. Society, 92 Ind., 82; Murtland v. English, 214 Pa., 325; Stone v. Stamping Co., 155 Mass., 267.

2. **SAME.** Same. Tenant holding over and paying same rental is tenant at will; case in judgment.

Where a lease for one year at a rental of one hundred dollars per month, payable monthly, gives the lessee the privilege of leasing the building two additional years, at the rate of $1,320 per year and $1,500 per year, respectively, payable monthly, and provides that "for no reason shall this lease be construed to continue for more than the time as set out herein, and occupancy by tenant thereafter shall be from month to month at the pleasure of the lessor;" and where the lessee, at the expiration of the term, gives no notice of intention to renew the lease, but holds over, paying the original rental, which is

Carhart v. White.

accepted by the lessor, without objection on account of his overlooking the provision as to increased rental, the lessor holds as tenant at will, and is not liable for the increased rental.

FROM KNOX.

Appeal from the Chancery Court of Knox County.— H. L. McCLUNG, Chancellor.

JOHN W. GREEN, for complainant.

R. A. SANSOM, for defendant.

MR. JUSTICE McALISTER delivered the opinion of the Court.

The object of this bill is to collect an alleged balance due complainant on rentals of a storehouse situated on Jackson street in the city of Knoxville. The solution of the question of liability on the part of the defendant depends on the proper construction of a written lease executed by the parties.

The complainant, H. B. Carhart, is a resident of the city of New York, and through his agent, Alex. McMillan, leased the premises in question to the White Mantel & Tile Company. The material portions of the lease necessary to be quoted are as follows:

"This indenture, made this 26th day of February, 1906, between Alex. McMillan, agent for H. B. Car-

hart, of the first part, and the White Mantel & Tile Company, of the second part, witnesseth: That the party of the first part hereby leases to the parties of the second part the following premises, to wit: The three-story and basement brick building situate No. 121 West Jackson ave., Knoxville, Tenn.

"It is understood and agreed to that the parties of the second part are given the privilege of leasing this building two additional years from the expiration of this lease at the rate of $1320 per year and $1500 per year, respectively, payable monthly.

"For the space of one year from February 1, 1906, and covenants to keep the tenant in quiet possession of the premises during said term.

\*       \*       \*       \*       \*       \*       \*       \*

"In consideration whereof the parties of the second part bind themselves to pay for the same $100 on the first of each and every month, being at the rate of $1200 per annum," etc.

Among other stipulations in the lease is the following:

"(12)    It is specifically understood that for no reason shall this lease be construed to continue for more than time as set out herein, and occupancy by tenant thereafter shall be from month to month at the pleasure of the lessor."

The defendant lessee took possession of the premises February 1, 1906, and remained in possession till February 1, 1908. There was no renewal or extension, or

any additional contract, oral or written, entered into between the parties; but the defendant lessees continued to hold over, paying the same rental. It appears that McMillan, the agent, collected rent during the two years the lessees were in possession at the rate of $100 per month, or $1200 per annum, and during the second year there was no demand on the part of the agent for any additional rentals, although, as stated, the contract provided that the rental for the second year should be $1320. This is explained by the fact that, when the lease was executed, Mr. McMillan sent the copy thereof to complainant, who resides in New York, and McMillan, not having the lease in his possession, overlooked its terms, and accepted the $100 per month for the second year. Complainant testifies that, when he received the lease from McMillan, he put it in his safe, and, having forgotten the terms thereof, he accepted, through oversight, the $100 per month sent him by McMillan. His recollection of the terms of the lease was not refreshed until about January, 1908, when he was informed that the lessees were about to vacate the property, when he examined the lease and discovered that he was entitled to $110 per month for the second year, and that the lessees were still indebted to him in a balance of $120. It is agreed that the receipts executed by McMillan to the lessees recited payment in full; but, as stated, the contention on behalf of complainant is that this was an oversight, both on the part of himself and McMillan, his agent. It is also admitted that, when

Carhart v. White.

complainant and his agent discovered the mistake, a demand was made by the lessees to correct the matter; but additional payments were refused.

It will be observed that the lease on its face provides for a rental for one year from February 1, 1906, to February 1, 1907, at the rate of $1200, and contains the following clause as to the subsequent years, namely:

. "It is understood and agreed that the parties of the second part are given the privilege of leasing this building two additional years from the expiration of this lease at the rate of $1320 per year and $1500 per year, respectively, payable monthly."

It is the contention of complainant that the defendant lessee, by holding over after the first year, became liable for the increased rental prescribed for the two succeeding years, amounting to a balance of $120 for the year ending February 1, 1908, and the entire rent, amounting to $1500, for the third year, to wit, the year 1909. Defendant, on the other hand, denies any liability whatever under the contract, averring (1) that it had paid all the rent due or demanded of it up to February 1, 1908, when it surrendered possession; (2) that the lease had terminated by its express terms when defendant vacated the premises; and (3) that the building had become damp and unfit for use, and that on this account defendant was well warranted in abandoning the premises.

Defendant in its answer further avers that under the terms of the lease its holding over for an additional per-

iod beyond the first year was a rental from month to month at the pleasure of the lessor, and that the lease itself simply gave the defendant the privilege of making a new lease of the building for two additional years, and not the privilege of renewing or extending the old lease two additional years. The contention of the lessee is that, in order to have rendered itself liable for the rentals of the second and third years, it was necessary that it should have executed a new contract embracing the terms and stipulations under which the defendant was to hold. As already seen, the written lease between the parties provided that the lessee was "given the privilege of leasing this building two additional years from the expiration of this lease at the rate of $1320 per year and $1500 per year, respectively, payable monthly."

The question presented for the determination of this court is in respect of the proper construction of this clause of the lease.

In Underhill on Landlord and Tenant (Ed. 1909), sec. 803, it is said:

"It is often necessary to distinguish between a lease for a term, with a provision that at the election of the lessee it shall be continued for a further term, and a lease for a fixed term with a covenant that on or before the expiration of that term the lease shall be renewed if the lessee shall so elect. The question is always one of construction, dependent wholly upon the language of the lease in each case. No general rule can be gath-

ered from the cases by which one can distinguish be-
tween a present demise, which shall terminate at a fixed
date or shall endure for a further period thereafter at
the option of the tenant, and a lease for a definite term,
with an agreement to make a new lease when it shall
have ended. Thus a lease for a term of five years, with
the privilege of renting for another term, requires a
new lease to be executed, and the mere holding over by
the tenant is not a renewal. But in the same State it
has been held that a lease of three years, with a privilege
of five years, does not require any renewal, for the exer-
cise of the option by continuing in possession extends
the lease. The lessee can either get out or stay in at
the end of the three years. So where a lease gives a
lessee a renewal at his election, and he elects to con-
tinue, a present demise is created, which is subject to
all the conditions and covenants of his former lease,
and it is not necessary that a new lease shall be exe-
cuted. In the absence of an express provision that a
new lease is intended to be executed, the presumption
is that no new lease is intended, but that the lessee is
to continue to hold under the original lease. The lease
must clearly and positively show that the making of
a new lease was intended. This must appear from the
express language of the parties. The reason for the
presumption is the fact that the making of a new lease
would involve trouble and expense, which should be
avoided by the courts, if possible, unless it is very clear
that the parties have previously agreed to incur such

trouble and expense. For if the new lease, as is always the case, when executed, is but a substitute for and a re-execution of the old lease, it is in no wise more efficacious or obligatory, nor does it confer any greater rights, than the old. Hence a court of equity will not direct the performance of a useless ceremony but will regard such leases as conferring a vested interest in the lessee at their execution, with an option in him to continue or determine that interest at some future date. In all cases where, from the language of the lease, viewed in connection with the circumstances of the case, it is clear that the execution of a new lease was not the intention of the parties, but that the provision was for an extension, the continuing in possession of the lessee after the lease has expired without notice to the landlord, unless notice is expressly required, is an extension of the lease, and operates to continue the relation of landlord and tenant."

Another case cited by counsel for complainant is *Insurance Co. v. National Bank,* 71 Mo., 58. In that case the lease provided that the lessee should hold a certain bank building from May 1, 1867, "for and during a term of three years at a yearly rental of $7000, payable $583.33 monthly when due. . . . And the said lessee has the privilege of a renewal for ten years more from the expiration of this lease at a yearly rental of $7000 payable monthly." The lessee entered into possession, continuing in possession for the original term of three years, when, without requesting a new

lease or entering into one, the tenant continued in pos-
session as he had previously done until May 31, 1876,
when he removed from the premises.  The landlord sued
for the rent, and the tenant contended that the terms of
the lease required the landlord to make a new lease,
and that the only effect of the continued occupation of
the premises was to create a new contract for a tenancy
from month to month.  The supreme court of Missouri,
in deciding the case, said:

"It is conceded that, when a lease provides simply for
an extension of the term at the option of the lessee,
nothing need be done by the lessor, and the occupa-
tion and payment of the rent constitute sufficient evi-
dence of the lessees election to so extend the term; but
it is insisted that when the lease provides for a renewal
at the option of the lessee, though for a specified time
and at a designated rate, there must be affirmative ac-
tion of the lessor as well as the lessee, and that in the
absence of such express contract the only contract exist-
ing between the parties is that which the law will im-
ply.  It may be doubted whether the word 'renewal,'
as employed in the lease, implies anything more than an
extension of the term. . . .  After the expiration of
the original term of three years, the defendant could
only remain in possession of the demised premises in
one of two ways: (1) By holding over under the terms
of the original lease; (2) by accepting the terms of the
renewal therein provided for. . . .  Under these cir-
cumstances, we think the defendant is estopped to deny

that the term had been extended under the clause of renewal."

In *Delashman* v. *Berry*, 20 Mich., 292, 4 Am. Rep., 392, the lease provided that the lessee should hold the premises "for a term of one year, with the privilege of having the same three years at the same rent, at the option of the lessee." The lessee remained in possession three years after the expiration of the first year, and was sought to be held liable for the full term of three years as though the lease had been formally renewed. On this subject the supreme court of Michigan held as follows:

"The circuit court held in effect that this continuance in possession after the expiration of the first year was not the exercise of the option thus to continue for a longer period, and that, to give him the right to continue for the optional term, he was bound to give actual notice of such intention at the end of the first year, or at least before the suit to eject him was commenced. Such a notice, had it been given, would have been a notice only of the lessee's intention to continue the same occupation upon the same terms as before; and, upon principle, it would certainly seem that actual continuance of such occupation was the best and most conclusive evidence of his intention to continue. But one inference could legally and properly be drawn by such continuance after the year, namely, that he intended to continue regularly according to the terms of his lease rather than wrongfully in defiance of its provisions. If

Carhart v. White.

he elected to remain at all after the first year, he must be held to have remained under and according to the terms of the lease."

Another case cited by counsel for complainant in his brief is *Terstegge* v. *First German Society,* 92 Ind., 82, 47 Am. Rep., 135. In that case the lease contained the following provision, viz.: "Said party of the first part hereby rents and leases for a period of five years, from January 1, 1874, with the privilege of five years more," etc. The lessee did not surrender the premises at the expiration of the five-year term, but elected to hold over. The supreme court of Indiana held as follows:

"We must hold that if the society (the lessee) remained in possession of the premises after the expiration of five years, and paid the rent according to the lease, and nothing was said by either party upon the subject of an additional five-year holding, such holding over was an election to hold for an additional five years, and bound the society for the rent."

When these authorities are applied to the paragraphs of the lease in question, it is insisted that the words "privilege of leasing" are equivalent to "privilege of holding," or "privilege of occupying." It is further said the terms of the contract for the second and third years, the parties to the contract, as well as its subject-matter, are all specifically described, and there could be no practical utility in the execution of a new lease, but on the other hand, it would involve trouble and expense. Now

it is insisted by counsel for the lessor that where a lease is given for a term of years, with the provision that at the expiration of the term the lessee, at his option, may have an extension thereof for an additional period, the mere holding over by the lessee constitutes an acceptance of the option to extend and binds the lessee for the additional term. The covenant or agreement to extend is a present demise, which becomes operative immediately upon the exercise of the option conferred. The law is so announced in Cyc., vol. 24, p. 1008, and Amer. and Eng. Ency. of Law, vol. 18, p. 690.

It is insisted by counsel for the lessees that the weight of authority is to the effect that the mere holding over of the lessee without any affirmative act on his part constitutes him merely a tenant at will, or from month to month. It is insisted that there must be some affirmative act by the lessee, in addition to mere continued occupancy, to render the contract of renewal operative.

However, the exact position of the lessees is that the present case does not involve either an extension of a lease or the renewal of a lease; but the inquiry is whether the property had been really leased for two additional years beyond the period of the present lease, and whether or not the holding over constitutes such a leasing. It is strenuously insisted on behalf of the lessee that is does not.

Having thus stated the contentions of the respective parties, we shall now state our own conclusions.

In the first place, we are of opinion that the mere continuance of occupancy by the tenant or lessee after the expiration of the lease period is ordinarily accepted as the exercise of the option reserved in the lease to occupy the premises for an additional term. This is the presumption that ordinarily arises from the mere fact of holding over; but it is not conclusive of the lessee's intention to accept the lease for an additional term. If the lease, as in this case, provides for an additional term at an increased rental, and after the expiration of the lease period the tenant holds over and pays the increased rental, this is affirmative evidence on his part that he has exercised the option to take the lease for an additional term; but where, under a lease like the present, the tenant holds over after the expiration of the original term, and does not pay the increased rental as provided by the lease, but continues to pay the original rental, which is accepted by the lessor, this negatives the idea of the acceptance of the privilege of an additional term. Under such circumstances, the lessee holding over will occupy the *status* of a tenant at will.

This distinction is recognized by the supreme court of Pennsylvania in the case of *Murtland and Others* v. *Joseph J. English,* 214 Pa., 325, 63 Atl., 882, 112 Am. St. Rep., 747, wherein the court said:

"We can see no merit in the suggestion that mere continuance in the possession of the premises after the lease had expired was in itself an acceptance of the option upon the part of the tenant for an additional term

of five years. The authorities cited on behalf of appellant apply only to cases in which no specific notice of an intention to exercise the privilege of renewal is prescribed in the lease. There might be conduct, such as the payment of an increased rental, which would be equivalent to an acceptance of the option. Thus in *Stone* v. *St. Louis Stamping Co.,* 155 Mass., 267, 29 N. E., 623, where the lease provided for a renewal at an increased rental, the holding over and payment of the increased rent by the lessee was considered evidence of his election to renew, although no proof was offered of the notice prescribed in the lease having been given. But in the case at bar the tenant neither gave notice nor paid any increased rental. There was nothing to indicate that the tenant had any intention of binding himself to stay upon the premises for another full term of five years. And when he held over after the expiration of the term, without making any new arrangement, the tenancy became one for another year upon the same conditions as before."

This case is reported in 6 Am. and Eng. Ann. Cas., 339, and is fully annotated, and the text of the opinion shown to be supported by the weight of authority. In the note it is said:

"The general rule is that where a lease grants to the lessee the option of a renewal at the expiration of the original term, without any requirement that notice shall be given as to the election to renew, and the lessee holds over after the expiration of the term, the presumption is

that he has elected to renew his lease in accordance with the terms of the option"—citing many cases.

Again it is said in the note:

"The holding over is merely *prima facie* evidence of the lection to renew, and the presumption so raised is not conclusive, but is rebuttable by evidence"—citing *Atlantic Nat. Bank* v. *Demmon,* 139 Mass., 420, 1 N. E., 833.

Again the annotator says:

"The general rule stated above regarding the right of the lessor to consider holding over an election to renew generally applies, although the lease contains a provision that notice shall be given in case the lessee desires to exercise his option, as the requirement is for the benefit of the lessor, and not for the lessee, and may be waived by the former"—citing many cases.

We think this is a correct statement of the law and is controlling in the present instance. It has already been seen, from the paragraph quoted from the lease, that no notice is required of the lessee's intention to hold over; but he is given the privilege of leasing for an additional term of two years at an increased rental. The lessee gave no notice of his intention to exercise the privilege of leasing for an additional term, but merely continued in the occupancy of the premises, paying the same rental he was required to pay for the original term. The agent of the lessor accepted the same rental from month to month for the whole period of the second year, and paid over these amounts to the complainant

without objection or demand of additional rental on the part of either. It is not denied that the agent, as well as complainant himself, overlooked the terms of the lease requiring the payment of additional rental in the event of the occupation of the premises after the expiration of the original term of one year. This, however, does not change the rule of law that, where the tenant holds over and continues to pay according to the terms of the original lease, the presumption that he has accepted the additional term is rebutted, and he must be regarded, under such circumstances, as a tenant at will, with the right of the landlord to oust him at any time for the nonpayment of the increased rental prescribed by the contract for the additional term.

We are further of opinion that the defendant, White Mantel & Tile Company, never having exercised the option of leasing the premises for an additional term, had a right to vacate in January, 1908, without incurring any further liability for rent, it being conceded at that time that the lessees had paid, and the lessor had accepted, all the rent due according to the rates stipulated for the original term.

The decree of the chancellor will be affirmed.