IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 30, 2015 Session

IN RE ESTATE OF LINDA QUASNITSCHKA KIRBUS

Appeal from the Chancery Court for Monroe County
No. 18079    Hon. Jerri S. Bryant, Chancellor

No. E2014-02091-COA-R3-CV-FILED-SEPTEMBER 1, 2015

This is an estate case involving the division of two properties used as collateral to secure a commercial note. When the decedent's beneficiaries sought to partition the properties, her former husband objected, asserting that he assumed sole ownership of the properties by fulfilling the note with proceeds from the decedent's life insurance policies. Following a hearing, the trial court found that the beneficiaries were entitled to a 70 percent share of the properties. The former husband appeals. We affirm the decision of the trial court as modified.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed as Modified; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and THOMAS R. FRIERSON, II, J., joined.

Wynne du M. Caffey, John T. Rice, and Gary T. Dupler, Knoxville, Tennessee, for the appellant, Frank Kirbus.

Lewis S. Howard, Jr. and Erin J. Wallen, Knoxville, Tennessee, for the appellee, Blair Quasnitschka, individually and as personal representative for the Estate of Linda Quasnitschka Kirbus and Alex Quasnitschka.

**OPINION**

**I.    BACKGROUND**

Frank Kirbus ("Husband") and Linda Quasnitschka Kirbus ("Decedent") were divorced by final decree in Avon, Connecticut in June 2008. Decedent had two children prior to the marriage that have attained the age of majority. No children were born of the marriage. Husband and Decedent owned several parcels of real property at the time of

the divorce.  The parcels at issue are Lots 426 and 1119 in Tennessee.  The lots were used as collateral to secure a commercial note in the amount of $688,619.94.  The separation agreement[1] that was incorporated into the final decree of divorce provided as follows:

## Article V – LIFE INSURANCE

[Decedent] will retain the [Husband] as primary beneficiary on her two life insurance policies, with face value of $850,000.00 combined, until lots 426 and 1119, Rarity Bay, Vonore, TN are sold.  [Husband] will retain [Decedent] as primary beneficiary on his $1,000,000.00 face value life insurance policy until both Rarity Bay lots cited above are sold, and until such time as [Decedent] is no longer a mortgagor or is in any way financially obligated to lot 130, Rarity Club, Jasper, TN.

Upon said conditions being met, the parties are free to change beneficiaries on their respective policies.

## Article VI – REAL ESTATE

\* \* \*

[Decedent] and [Husband] agree to share monthly expenses on lots 426 and 1119 Rarity Bay, Vonore, TN.  Upon the sale of each parcel the parties agree to share the proceeds of the sale as follows:

[Decedent] will [receive] 70% of the net equity proceeds and [Husband] will [receive] 30% of the net equity proceeds.  [Decedent] will also be given the CD Suntrust Account which is associated to the loans of said properties. [Decedent] will also receive the refund of the golf membership if and when said property sells.  Said parcels shall be held jointly until they are sold.  The parties agree to reduce the asking price of lot 426 from $595,000.00 to $545,000.00 and on lot 1119 from $339,000.00 to $289,000.00.  Any further reductions in order to sell said properties shall be made between the parties.  [Husband] will have sole ownership of lot 130 Rarity Club, Jasper, TN.  [Decedent] will execute all necessary deeds and documents to accomplish same and [Husband] will hold [Decedent] harmless from any and all mortgage payments on said property.  Both

---

[1] In Tennessee, these agreements are referred to as marital dissolution agreements.

parties agree to execute all necessary documents and deeds in order to effectuate the terms and conditions of the Settlement Agreement.

Husband and Decedent enjoyed an amicable relationship following their divorce until Decedent succumbed to cancer in October 2012. Shortly thereafter, Husband obtained a copy of her death certificate and collected the proceeds from her two life insurance policies. He used a portion of the proceeds to fulfill the commercial note on Lots 426 and 1119 in the total amount of $435,781.08.

Decedent's will provided for the descent of her interest in any real property to her two sons, Blair and Alex Quasnitschka (collectively "Beneficiaries"). Blair Quasnitschka ("Executor") was also designated as the executor of the estate. Executor filed the will in the State of Connecticut, Court of Probate, Simsbury Regional Court, District No. 9 ("the Connecticut Court"). After a decree granting administration of probate was issued, Executor filed a copy of the record from the Connecticut Court and a petition for probate of the will as muniment of title to Lots 426 and 1119 in the Monroe County Probate Court. The probate court entered an order finding that the will served as muniment of title to Decedent's interest in Lots 426 and 1119.

Beneficiaries then filed a joint petition in the Monroe County Chancery Court to partition Lots 426 and 1119, alleging that they owned an undivided 70 percent interest in the properties pursuant to the will and the separation agreement. They requested a partition in kind, with title of Lot 426 passing to them and title of Lot 1119 passing to Husband, who retained a 30 percent interest in the properties pursuant to the separation agreement. Husband responded by denying that Beneficiaries were entitled to any portion of the properties.

Husband filed a counter-complaint, requesting a declaratory judgment establishing that he was entitled to the entirety of the properties. He claimed that Decedent did not have an equitable interest in the properties because the commercial note exceeded the fair market value of the properties at the time of her death. He asserted that he assumed equitable and actual ownership of the properties by fulfilling the note after Decedent's passing. He alternatively argued that he was entitled to 70 percent of the amount paid to unencumber the properties and 70 percent of the ongoing expenses associated with the properties. Beneficiaries responded by asserting that the separation agreement provided for the use of the proceeds from the life insurance policies to unencumber the properties in the event of either party's untimely death.

Prior to trial, the court ruled that it would "construe the documents executed in Connecticut pursuant to Connecticut law and decide the real property and partition issues under Tennessee law." Executor acknowledged at trial that he used estate funds to pay

Decedent's November and December payments on the note and to pay other property expenses pursuant to Decedent's agreement with Husband. He recalled that Husband later requested a copy of the death certificate to claim the proceeds from the life insurance policies. Executor admitted that he asked Husband to document his intent to use the proceeds to unencumber the properties and that he only provided Husband with two copies of the death certificate after he received the requested documentation. He claimed that Husband fulfilled the note as agreed. He stated that Husband never sought assistance from him or the estate in fulfilling the note and never requested payment or contribution in connection with the final payment of the note.

Executor testified that Husband ignored his repeated requests to partition the properties pursuant to Decedent's will and the separation agreement and that his attempted communications with Husband became less than civil. He requested fee simple ownership of Lot 426 as a partition in kind of the properties. He opined that Lot 426 was worth approximately 70 percent of the total value of the two properties.

A portion of Husband's deposition testimony was read into the record at trial. Husband stated that he and Decedent procured the life insurance policies to protect them financially after they purchased Lots 426 and 1119. He said that he used some of the proceeds from the life insurance policies to fulfill the note secured by the properties.

Husband testified at trial that he and Decedent planned to build a home on Lot 1119 and to use Lot 426 as an investment property. He recalled that they listed the properties for sale after they purchased a third lot. He acknowledged that he agreed to the division of his interest in the properties as reflected in the separation agreement. He provided that they alternated the payment on the note secured by the properties each month and that Decedent reimbursed him for half of the property expenses each year while they awaited the sale of the properties. He stated that he continued to remit payments on the note following Decedent's passing and that he allowed Decedent's estate to continue remitting her payments on her behalf. He claimed that he fulfilled the note because he could not refinance the note, which was set to mature in December 2012. He agreed to provide the requested documentation to Executor because he needed the death certificates to claim the life insurance proceeds.

Husband requested fee simple ownership of Lots 426 and 1119. He alternatively requested contribution from Beneficiaries for their portion of the properties he unencumbered and for expenses related to the properties. He agreed that he did not request contribution from Beneficiaries immediately following his payment of the note.

Following the presentation of the above evidence, the trial court determined that Beneficiaries were entitled to a partition of Lots 426 and 1119. The court stated, in pertinent part,

> There's no language in the document that requires that in the event of either party's death this money is to be paid on the debts. But life insurance is there to protect the parties from the debt. The deadman statute prohibits testimony about her intent in this matter, and so I have to look at not just the real estate paragraph but the life insurance paragraph.
>
> * * *
>
> Life insurance is for the purpose of protecting the party that remains alive. And that would be relying on the other party for help in payments of debts. Since this document did not address how the ownership would change, the Court can assume that the ownership did not change. The life insurance would be there to protect the debt but not to change the ownership.

Upon its receipt of the court-ordered appraisal, the court entered a final order of partition in kind, providing that Beneficiaries were entitled to fee simple ownership of Lot 426 and that Husband was entitled to fee simple ownership of Lot 1119 and a credit in the amount of $5,500 to equalize the partition pursuant to the separation agreement. This timely appeal followed.

## II.    ISSUES

We consolidate and restate the issues raised on appeal as follows:

A.    Whether the trial court erred in partitioning the properties.

B.    Whether the trial court erred in denying Husband's claim for contribution.

## III.    STANDARD OF REVIEW

At issue in this case is the interpretation of the separation agreement between Husband and Decedent. In terms of contracts, like the separation agreement at issue in this appeal, Tennessee has long applied the doctrine of "lex loci contractus" when dealing with contractual choice-of-law issues. *Ellis v. Pauline S. Sprouse Residuary Trust*, 280 S.W.3d 806, 814 (Tenn. 2009). "[T]his rule provides that a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent."

*Vantage Tech., LLC v. Cross*, 17 S.W.3d 637, 650 (Tenn. Ct. App. 1999). Accordingly, we conclude that application of Connecticut law to this case on the substantive issues before the court was appropriate when the separation agreement was executed in Connecticut. However, "Tennessee's law governs the procedural aspects of this case even if [Connecticut's] law governs the substantive issues." *Standard Fire Ins. Co. v. Chester O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 5 (Tenn. Ct. App. 1998).

We review a trial court's findings of fact de novo with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). We review questions of law de novo with no presumption of correctness. *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006).

## IV. DISCUSSION

### A.

Husband argues that the separation agreement was silent as to whether he was required to apply the insurance proceeds to the commercial note, thereby providing Beneficiaries with unencumbered property at no cost to them. He claims that reading such a requirement into the contract was erroneous. Beneficiaries respond that the court properly construed the agreement by interpreting the language in light of the situation of the contracting parties and the circumstances present at the time of contracting.

The general rules and principles guiding the construction of a contract in Connecticut provide as follows:

> It is well established that a separation agreement that has been incorporated into a dissolution decree and its resulting judgment must be regarded as a contract and construed in accordance with the general principles governing contracts. *When construing a contract, we seek to determine the intent of the parties from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction . . . .* [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. When only one interpretation of a contract is possible, the court need not look outside the four corners of the contract. . . . Extrinsic evidence is always admissible, however, to explain an ambiguity appearing in the instrument. . . .

*Isham v. Isham*, 972 A.2d 228, 180-81 (Conn. 2009) (citations and internal quotation marks omitted) (emphasis added). The Supreme Court of Connecticut further provides,

> Contract language is unambiguous when it has a definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion. . . . The proper inquiry focuses on whether the agreement on its face is reasonably susceptible of more than one interpretation. It must be noted, however, that the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. Finally, in construing contracts, we give effect to all the language included therein, as the law of contract interpretation . . . militates against interpreting a contract in a way that renders a provision superfluous.

*Id.* at 180-81.

The agreement specifically required Husband and Decedent to designate the other party on their respective life insurance policies until the properties were sold. The agreement also provided that Decedent was entitled to a 70 percent share of the net equity proceeds when the properties were sold. Without adding to or detracting from the agreement, we agree with the trial court that the language used indicates that the parties intended to protect each other from the commercial note by maintaining individual life insurance policies. The agreement did not anticipate a change of ownership if and when either party unencumbered the property by using the proceeds from one of the life insurance policies. Husband essentially requests the addition of a new term into the contract, namely that he acquired ownership of the properties by unencumbering them. While the parties may have added this term had their attention been called to that possibility, we may not add the term at this stage in the proceeding given the absence of any language in the agreement supporting the requested interpretation. Accordingly, we affirm the trial court's partition in kind of the properties.

B.

Husband alternatively requests relief in the form of contribution because he paid more than his share of the debt as a result of Decedent's passing. Beneficiaries respond that Husband is not entitled to relief when the separation agreement provided for the discharge of the debt through the use of the proceeds from the life insurance policies. Beneficiaries alternatively respond that he waived any claim of contribution by failing to

file a claim in either estate proceeding and by failing to request contribution following his payment of the commercial note.

Tennessee law governs this issue. A review of the record reveals that Husband specifically requested equitable relief in his counter-complaint for a declaratory judgment. Indeed, he requested "70% of the amount paid to unencumber the lots, equaling a total of $305,046.76, and 70% of all the ongoing expenses associated with said lots." Accordingly, this issue is not waived.

The right to contribution, now statutorily recognized by Tennessee Code Annotated section 47-3-116(a), was founded upon equitable principles. *Thompson v. Davis*, 308 S.W.3d 872, 880-81 (Tenn. Ct. App. 2009). The right to contribution only applies where the "'parties share a common obligation or liability, but one party has paid more than its proper share of the obligation.'" *Id.* at 881 (quoting *First Nat'l Bank of Chicago v. Cumberland Bend Investors, L.P.*, No. M2000-00001-COA-R3-CV, 2002 WL 31835693, at *4 (Tenn. Ct. App. Dec. 19, 2002)). Here, Husband shared a common obligation with Decedent, namely the commercial note that secured the two properties at issue in this appeal. The parties intended to protect each other from the commercial note by maintaining individual life insurance policies. Husband remitted more than his proper share of the obligation by fulfilling the note in its entirety. While we agree that Husband's fulfillment of the note did not enact a change of ownership in the properties secured by the note, he is entitled to contribution from Decedent's estate based upon his payment of Decedent's share of the debt and ongoing expenses.

With all of the above considerations in mind, we affirm the trial court's partition in kind of the properties but modify the court's judgment to reflect a lien on the property awarded to Beneficiaries for Husband's payment of Decedent's share of the debt and expenses. We remand this case to the trial court for a hearing to determine the amount paid by the Husband on the Decedent's share of the debt and the expenses. This amount will be the amount of the lien.

## V. CONCLUSION

The judgment of the trial court is affirmed as modified. The case is remanded for such further proceedings consistent with this opinion. Costs of the appeal are taxed to the appellee, Blair Quasnitschka, individually and as personal representative for the Estate of Linda Quasnitschka Kirbus and Alex Quasnitschka.

_____
JOHN W. McCLARTY, JUDGE

- 8 -